## THOMAS W. PUMPHREY, JR., ET AL. *v.* CHARLES L. PUMPHREY.

[No. 52, January Term, 1937.]

*Decided April 9th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William L. Rawls* and *Hiram C. Griffin,* for the appellants.

*Walter V. Harrison,* with whom was *Robert France* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The plaintiffs and the defendant are brothers who own in equal proportions the capital stock of the Riviera Beach Development Company. On July 12th, 1934, they entered into a written agreement relating to their exercise of an option for the purchase of the interest in the stock of that corporation, and of the Sunset Beach Development Company, which had been held by their brother-in-law, and providing for the arbitration of any dispute which might arise as to their respective rights and interests under the agreement or in the two companies. In March and May, 1935, the parties submitted for arbitration certain questions of indebtedness and compensation which arose from their relations to the companies and were involved in conflicting claims. As a result of the second of those arbitrations, the defendant's employment by the companies was terminated. In December, 1935, the plaintiffs, without the assent of the defendant, submitted for arbitration the following questions:

"1. Whether the defendant should use his residence or any other building at Riviera Beach (or at Sunset Beach) to transact his general real estate brokerage business.

"2. Whether the defendant, except with the consent of the two Development Companies, should act as real estate broker or agent for the sale or rental of property at Riviera Beach and Sunset Beach not owned by either of those corporations.

"3. Whether the defendant should be permitted to acquire property at Riviera Beach or Sunset Beach, not owned by either of the two Development Companies, to be used for any purpose other than as a residence for the defendant and his family."

After a hearing, in which the defendant did not participate, the arbitrators answered in the negative each of the questions just stated. This suit for an injunction to effectuate the decision thus rendered by the arbitrators, in so far as it related to Riviera Beach, is contested upon the theory that the questions involved in their determination were not within the purview of the arbitration agreement. That defense was sustained by the chancellor, and the appeal is from a decree dismissing the bill of complaint. It was stipulated at the trial below that the only question in the case is whether the subject of the arbitration of December, 1935, was within the scope of the agreement of July 12th, 1934, and that the relief prayed for should be granted in the event of a decision favorable to the plaintiffs upon the issue thus defined.

This court has repeatedly said that, "as arbitrations are intended to compose disputes in a simple and inexpensive manner, whenever the parties to one have had a full and fair hearing, the award of the arbitrators will be expounded favorably and every reasonable intendment made in its support." *McDonald v. Real Estate Board,* 155 Md. 377, 382, 142 A. 261, 263; *Dominion Marble Co. v. Morrow,* 130 Md. 255, 260, 100 A. 292; *Roberts Bros. v. Consumers' Can Co.,* 102 Md. 362, 368, 62 A. 585; *Witz v. Tregallas,* 82 Md. 351, 33 A. 718; *Garitee v. Carter,* 16 Md. 309, 312. But in *Bullock v. Bergman,* 46 Md. 270, 278, it was said in the opinion: "While Courts regard awards with favor, and every intendment is made for their support, as was said in *Canton v. MacTavish,* 10 G. & J. 193; *Ebert v. Ebert,* 5 Md. 353 and *Roloson v. Carson,* 8 Md. 208, yet it is well settled that they cannot be supported, if the matters awarded are not within the terms of the submission; the parties are not bound except by their agreement, and a decision by the arbitrators of any matter not referred to them is beyond their authority."

In 3 *American Jurisprudence, Arbitration and Award,* sec. 41, it is said: "There is nothing peculiar in the rules

of interpretation applied to arbitration agreements. As in the case of all agreements, the courts seek to give effect to the intent of the parties, as evidenced by the agreement itself, which will be liberally construed to that end. Where the meaning of words used is in controversy, the language will be taken in its natural sense, without straining it in either direction, and it is the rule that the agreement will be construed as a whole. While the courts seek to uphold arbitration agreements even where they are somewhat uncertain and indefinite, provided the deficiency may easily and certainly be supplied, and while it has been held that subjects not within the strict letter of the agreement, but plainly and necessarily within the spirit are included, the terms of the agreement are, nevertheless, exclusive. Under the general rule, no matter not plainly included, may validly be determined by the arbitrators, but the parties are left to the ordinary course of litigation for their remedy." To the same general effect is the statement in 5 *C. J.* 407.

As we construe the agreement now before us, it committed the parties to arbitrate only disputes relating to their respective interests in the designated corporations and in the options and property to which the agreement referred. That purpose is reflected in the recital of a desire by the parties "to agree upon a method of arbitration should any dispute arise between them affecting their respective, existing or future interests in the aforesaid companies or land." The operative provision of the agreement, in regard to arbitration, is in the following form: "In the event of any dispute, arising between the parties hereto, involving their respective interests in the Riviera Beach Development Company, the Sunset Beach Development Company, or the 'Mewshaw Land,' as to any question of any kind or sort now existing or hereafter arising, or their respective rights under this agreement, it is mutually agreed that any such dispute shall be referred to the judgment and decision of three (3) arbitrators * * * with full and complete powers in said arbitrators to decide and determine any question

that may be submitted to them involving the rights of the parties hereto, as aforesaid, the decision of two of the three arbitrators to be final and binding on all concerned."

At the time of the arbitration now in controversy, the only interest of the defendant in the Riviera Beach and Sunset Beach Corporations, or in their property, appears to have been that of a stockholder. When the arbitration agreement was executed in July, 1934, he was also one of their officers and employees. The two earlier arbitrations determined questions affecting his interests in those capacities. The quoted questions, which were subsequently arbitrated without his consent, had no relation to his former employment by the companies and were not involved in his stock ownership. They were concerned with his right to conduct an independent business as a real estate broker.

It is the specific purpose of this suit to prevent him from engaging in such a business, even at his Baltimore office, with respect to the sale or rental of property at Riviera Beach "owned by persons other than Riviera Beach Development Company," and from using his residence or any other building at Riviera Beach for sale or rental transactions in regard to property so located and owned. Negotiations by the defendant for the sale or rental of such property in that area are said to involve a harmful competition with the Development Company's promotion activities. It is alleged in the bill of complaint that the deed for the lots occupied by the defendant's residence provides that no place of business shall be established on them without the vendor's written consent, which has not been granted. But that conveyance provision was not mentioned in the report of the arbitrators as one of the grounds of their decision. It is in effect recognized as irrelevant by the stipulation that the sole question in the case is whether the latest arbitration was within the terms and intent of the agreement by which it is said to have been authorized. Clearly, any right of the plaintiffs to enforce a restrictive cove-

nant in a deed for Riviera Beach property could not be made dependent upon the result of an arbitration under the agreement which is now being construed.

It was the expressed intention of the parties to provide a method for the decision of any dispute arising between them "involving their respective interests" in the development companies "as to any question of any kind or sort now existing or hereafter arising, or their respective rights under this agreement." The right of the defendant to function as a real estate broker on premises not owned by either of the development companies, or to negotiate elsewhere the sale or rental of Riviera and Sunset Beach properties, was not a right or an interest which the agreement purported to affect. The words "any question of any kind or sort now existing or hereafter arising" evidently refer to questions relating to the rights and interests indicated in the context, and not to an unlimited range of undefined disputes.

It has been argued that the applicability of the agreement to the disputes last presented to the arbitrators was itself a question which arose under the agreement and which therefore they had authority to decide. That view does not accord with our understanding of the agreement and of its intended limitations.

It is suggested also that the first two arbitrations extended, with the defendant's consent and participation, to questions beyond the limits within which he would now require the agreement to be restricted. The answer to this suggestion is that the prior arbitrations were not only conducted under separate and definite submission agreements, but they were directed to the decision of questions which had distinct reference to contractual relations of the parties with the corporations in which they were interested.

In *Baltimore v. Talbott & Co.*, 120 Md. 354, 87 A. 941, and *Id.*, 133 Md. 226, 105 A. 149, cited by the appellants, the finality of decision by the city's engineer as to its liability for certain sewer construction work was supported by virtue of contract provisions which were materially

different in their purpose and effect from those considered on this appeal.

In our opinion the chancellor was right in his conclusion that the arbitration relied upon and resisted in this suit was not within the terms of the agreement upon which it was predicated.

*Decree affirmed, with costs.*