**B. FERNANDEZ & HNOS., S. EN C., v. RICKERT RICE MILLS, Inc.**

No. 3619.

Circuit Court of Appeals, First Circuit.

May 8, 1941.

L. E. Dubon, of San Juan, P. R. (Dubon & Ochoteco and Otero Suro & Otero Suro, all of San Juan, P. R., on the brief), for appellant.

· Walter L. Newsom, Jr., of San Juan, P. R. (Henri Brown, of San Juan, P. R., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for Puerto Rico for the plaintiff in the sum of $4,250 with interest.

The action arises out of a written contract for the purchase and sale of rice entered into September 25, 1939, between the plaintiff, Rickert Rice Mills, Inc., hereinafter called the seller, a corporation incorporated under the laws of the State of Louisiana, with its principal offices located in the City of New Orleans in that State, and the defendant, B. Fernandez & Hermanos, Sucesores, S. en C., hereinafter called the buyer, a limited partnership organized under the laws of Puerto Rico, with its principal offices in San Juan.

The form of contract used was the standard Puerto Rican contract of the Rice Mil-

lers' Association, which has been used since August 1, 1932. The relevant portions of the contract are as follows:

"(c) Notice.—After buyer or his representative has exercised his right of inspection within three (3) business days after

"Porto Rican Contract of The Rice Millers' Association
"Effective August 1st, 1932

"San Juan, P. R., Sept. 25, 1939

"Rickert Rice Mills, Inc., New Orleans, La. hereby sells and agrees to deliver, and B. Fernandez & Hno. San Juan, the undersigned buyer, purchases and agrees to pay for the following described merchandise:

| This space for Seller's Memorandum | Quantity 100-lb double pkts. 1,000 single cotton bags | Sample Numbers EXTRA FANCY ARKANSAS JAPAN rice coated | Price C.I.F. (Sacks inc.) $4.25 | Grades, Variety, Brands, Etc. Clean Rice |

*R.M.A.—Certificate to be final as to quality grade and conditions.*
Delivery C.I.F.—San Juan, P.R.
Time of Shipment.—First half November.—Primera quince noviembre.[1]

\* \* \*

"This agreement is made upon the terms and conditions above set forth, and those printed on the reverse side hereof, with all of which the parties hereto are familiar and agree to.
\* \* \*

"Accepted and confirmed: San Juan, P.R., Sept. 25, 1939

"Rickert Rice Mills, Inc.,—R. Fabregas.
"By:—(Signed)    R. Fabregas,
(Seller)
"B. Fernandez & Hnos.
"By:—    (Buyer)

\* \* \*

(over)
[On the reverse of this Contract, the following appears]
"Terms and Conditions of the Contract

"(a) The terms and payment of purchase price shall be net cash against draft, with bill of lading and marine insurance certificate attached, sellers order, notify buyer, draft to be paid promptly on arrival and examination of goods, but not to exceed five (5) business days after goods have been discharged from ship, unless written request for arbitration is made as provided below.

"(b) Examination and Approval.—Buyer shall have the right of inspection of goods on arrival, but shall exercise this right within three (3) business days after goods are discharged from ship; failure to inspect within three (3) business days, acts of God excepted, forfeits all rights to complaint and goods shall be accepted and paid for at full invoice price.

goods are discharged from ship as provided above, should the buyer find fault with the delivery he agrees to notify the seller's agent immediately in writing, a copy of said notice to be filed with the Rice Millers' Association at San Juan, and if the seller through his agent, or representative or both, and the buyer are unable to agree, the question in dispute shall be arbitrated.

"(d) *Arbitration.—Both buyer and seller hereby agree to submit all questions of quality, complaints, disputes and/or controversies that may arise out of or in connection with this contract,* in the following manner: the buyer agrees to file written request for arbitration with the secretary of the Chamber of Commerce of Porto Rico, \* \* \* within five (5) business days after goods have been discharged from ship, and further agrees to file a copy of said request with the seller's agent and one copy with the Rice Millers' Association at San Juan within the same period of time.

---

[1] The bracketed material represents the specific terms bargained for between this buyer and this seller and inserted in the standard printed contract.

Failure to request arbitration in the manner specified within five (5) business days after goods are discharged from ship, forfeits all right to complaint and goods shall be accepted and paid for at full invoice price. * * * Buyer and seller both agree that samples submitted for arbitration are to be drawn by the Rice Millers' Association representative from ten (10%) Per Cent of the entire lot of rice being arbitrated, * * * The Secretary of the body holding the arbitration will immediately notify the buyer, the seller's agent, and the Rice Millers' Association, San Juan office, in writing, of the findings of the arbitration committee, and a copy of the certificate furnished each. *The buyer agrees to accept and pay for the merchandise in accordance with the findings of the arbitration committee of first instance, immediately on receipt of notice of the finding of said committee, providing that the allowance made is not over one-fifth of one cent per pound. If the allowance is over one-fifth of one cent per pound, the buyer shall declare within twenty-four (24) hours his intentions either to accept the shipment at the allowance made, or require that another shipment be made as provided herein, subject, however, to the buyer or the sellers [sic] right of appeal,* as provided herein, it being understood that the case is not to be reopened or reheard in Porto Rico, but is subject only to an appeal as provided below. * * * Either party may appeal from the decision of the arbitration committee of first instance within three (3) business days after receipt of notice of decision. In case of an appeal, the Secretary of the body before whom the arbitration of first instance was held shall send the sealed samples to the Secretary of the Rice Millers' Association, or to the New Orleans Board of Trade at the option of the appealing party for a rehearing and final decision.

"Both the buyer and seller agree to accept as final the decision of the appeals committee and to abide by said decision, and agree further that final settlement will be made immediately upon receipt of notice of appeal decision. *In case of arbitration for difference of grade where the difference is not over one-fifth of one cent per pound, the buyer shall accept the goods at the allowance. If the difference amounts to more than one-fifth of one cent per pound, the buyers shall have the option to accept the goods at the allowance made by the appeals committee or to require that* another shipment be made, as provided herein above, or to consider the contract discharged and terminated, the money to be returned to buyer with interest at eight per cent (8%) per annum, plus accrued insurance and storage charges. Where the buyer exercises his right for another shipment, he shall immediately notify seller, who shall make shipment within fifteen (15) days from date of receipt of notification subject, however, to the final decision of the appeal committee as herein provided. *Differences in quality and all other differences as regarding the terms of this contract, including time of shipment, shall be arbitrated before the Chamber of Commerce of Porto Rico* * * * and can be reopened or reheard only by the appeal committee as provided in this contract.

* * *

"(f) Sales on Samples.—Where sale of rice is made on type or sample, seller, or his representative, shall leave with buyer at the time of offer a sealed sample representing the rice on which the sale is made, which sealed sample shall not be opened except upon complaint as to quality after inspection of goods by buyer, and then only in the presence of seller, or seller's representative.

"(g) Sales on Description.—When rice is sold on grade or description it is understood that the grades and their specifications shall be those given in U. S. Department of Agriculture Circular No. 291 and/or its amendments. *Rice Millers' Association Certificates, when furnished, shall be final as to quality, condition and grade.*
* * *

"(m) The printed terms of this contract may not be varied, altered, or amended under any condition." (Italics supplied.)

The lower court made findings of fact and conclusions of law which may be summarized as follows:

The seller shipped certain rice by steamer November 4, 1940, which duly arrived in San Juan. Immediately after the discharge of the rice from the ship it was examined by the buyer. The latter thereupon notified the seller in writing that it refused to accept or pay for the rice which had been shipped because it was "Fancy Japan" rice and not "Extra Fancy Japan" rice as had been ordered, and that therefore it was not bound to accept and pay for it. The certificate of the Rice Millers' Association which was furnished by the seller pursuant to the contract showed the grade

of the rice shipped to be "Fancy Japan Milled Rice" which is a grade inferior to "Extra Fancy Japan" rice.

The seller maintained that even though the Rice Millers' Association certificate showed the rice shipped to be of an inferior grade or quality, the buyer was required by the contract to submit to arbitration the question of the difference in value between the rice ordered and that shipped. If the difference were one-fifth of a cent per pound or less, the seller claimed that the buyer had to accept it at the allowance made. On the other hand, the buyer insisted that the contract made the certificate of the Rice Millers' Association conclusive and that the contract did not require it to submit the question of difference in value to arbitration or to accept an inferior grade of goods at an allowance when the shipment was accompanied by a Rice Millers' Association certificate. Therefore, the buyer steadfastly refused to accept the goods or to request arbitration, claiming that there was nothing to arbitrate.

The seller then submitted to the Arbitration Committee of the Chamber of Commerce at San Juan the question whether the matter in dispute between the parties was a controversy which they were bound to arbitrate. The buyer did not submit to the arbitration but objected in writing before the Committee that there was no question in controversy to be determined by the Committee under the terms and conditions of the contract. The Committee considered the matter on the seller's petition and the buyer's objections and decided that there was a controversy between the parties which they had agreed to arbitrate not only in accordance with the rules and regulations of the Chamber of Commerce, of which they were both members, but also according to the signed contract.[2] The buyer notified the Committee that it would not submit to the decision, but took no appeal.

The seller then brought suit to recover $4,250 with interest and costs, being the full invoice price for which the seller contended the buyer to be liable because of the latter's failure to request arbitration within five days after the goods were discharged from the ship. It also prayed the court to enter a decree declaring the existence of a vendor's lien in favor of the seller on said rice, and to provide for the sale of said rice on foreclosure if the buyer failed to pay the seller the amount allegedly due. It further prayed for the entry of a deficiency judgment against the buyer in an amount of the seller's claim remaining unpaid after payment to the seller of the net proceeds of the sale of the rice on foreclosure. The buyer denied any liability and set up the affirmative defence

[2] "The Committee appointed by the Board of Directors in their meeting of December 22nd. to determine if Messrs. B. Fernandez & Hnos. Sucs. as members of our Chamber of Commerce, are or not obliged to submit to arbitration certain dispute there is between them, renders the following report:

" 'The Committee has examined all documents in the hands of the Chamber of Commerce in connection with the matter. On September 25th it appears that B. Fernandez & Hnos. Sucs. San Juan, P. R. and Rafael Fabregas, in representation of Rickert Rice Mills, Inc. signed a contract covering 1,000 Pkts. of Rice.

" 'When the rice arrived the buyers refused to take up the goods claiming that the goods were not of the quality or grade referred to in the contract.

" 'With the merits of the case this Committee has nothing to deal with. Our only objective or duty is to report to our Chamber of Commerce if there is or not a controversy or matter under dispute between the parties that according with our rules and regulations has to be submitted to arbitration.'

" 'Art. No. 1 Chapt. No. 1 of our Rules and Regulations concerning arbitration, under title "Arbitration" reads:

" ' " * * * All members of the Chamber of Commerce of P.R. promise to solicit and accept arbitration on any question or dispute that may come up between them."

" 'Also on reverse side of the contract, clause (D), says as follows:

" '(D) Arbitration, both buyer and seller hereby agree to submit all questions of quality, complaints, disputes and/or controversies that may arise out of or in connection with this contract, in the following manner: (here follows details).

" 'It is the opinion of this Committee, that beyond any doubt there is a controversy between these two members. And that both parties have agreed to arbitrate, not only according with the Rules and Regulations of our Chamber of Commerce but also according with the signed contract. The fact that one party or the other party believes he is right in his contention does not mean that there is not a controversy between them. In all controversies one of the parties is right and the other not.' "

that the seller had not made delivery of the rice covered by the contract and that the buyer was not bound to accept an inferior product of a different grade and quality, if shown to be so by a certificate of the Rice Millers' Association. The seller in its reply to said answer averred that the buyer had waived its alleged defence· in that it had failed to request arbitration and that the Arbitration Committee had determined that there was a controversy between the seller and the buyer which they had agreed to arbitrate, and that the buyer had refused to submit to that decision.

Both parties moved for judgment on the pleadings. In the meantime the rice had been sold under the direction of the court, and the proceeds deposited in court subject to any vendor's lien which the seller might have had. Judgment was entered for the seller in the amount of $4,250 with interest thereon from January 5, 1940, with a vendor's lien for the seller on the net proceeds from the sale of the rice amounting to $2,979.74 and a deficiency judgment in the sum of $1,270.26. From this judgment the buyer has appealed.

The principal issues involved are whether the buyer had the right under the provisions of the contract to refuse to accept and pay for the rice shipped and to refuse to submit to arbitration the question of the difference in value between "Extra Fancy Japan" and "Fancy Japan" rice. However, it is first necessary to decide whether the Arbitration Committee of the Chamber of Commerce of San Juan had the right to decide the controversy as to what questions the parties had agreed to submit to arbitration.

The seller contends that when the buyer claims to have received inferior goods it must submit to arbitration the difference in value even though a certificate of the Rice Millers' Association conclusively shows that the rice shipped is of an inferior grade. The buyer's position is that when a Rice Millers' Association certificate is furnished and shows that the rice shipped is of an inferior grade, there is no agreement to arbitrate the difference in value. This raises a controversy between the parties as to just what questions they agreed to submit to arbitration. This controversy the seller laid before the Arbitration Committee over the objection of the buyer. The Committee construed the contract and apparently decided that by its terms the parties had agreed to submit to arbitration the question of difference in value even when there was a conclusive Rice Millers' Association certificate. The buyer continued to maintain its original position that the Committee had no right to pass upon the matter and that it had never agreed to submit this particular question to arbitration. The seller made no attempt to force an arbitration, but relied on the contract provision requiring the buyer to pay the full invoice price, regardless of difference in value, if the latter did not request arbitration within five days after discharge of the goods from the ship. The buyer still urges that he had no obligation to arbitrate this question since he had never agreed to do so.

It is now well settled that the question of the construction of a contract to determine what questions the parties thereto agreed to submit to arbitration is one for the court to decide and not for the arbitrators. Lehigh Coal & Navigation Co. v. Central R. of New Jersey, D.C.E.D.Pa. 1940, 33 F.Supp. 362, 367; Pumphrey v. Pumphrey, 1937, 172 Md. 323, 191 A. 235; Bullard v. Morgan H. Grace Co., 1925, 240 N.Y. 388, 148 N.E. 559 (1926) 35 Yale L. J. 369; In re Kelley, 1925, 240 N.Y. 74, 147 N.E. 363; Walker v. Walker, 1864, 60 N.C. 255; Piercy v. Young, 1879, 14 Ch. D. 200; see Sturges, Commercial Arbitrations and Awards (1930) 144–145; cf. Parsell, Arbitration of Fraud in the Inducement of a Contract, (1927) 12 Corn.L.Q. 351, 359. To allow the arbitrators conclusively to decide what questions were submitted to arbitration is to allow them finally to determine the extent of their own jurisdiction. If the parties intended that the arbitrators should have the power finally to decide what was to be submitted to them, there is no objection to their doing so, but the courts do not readily infer such an agreement. In re Kelley, supra; Piercy v. Young, supra, at 208; cf. Willesford v. Watson, [1873] L.R. 8 Ch.App. 473; see Sturges, op. cit.; Baum & Pressman, The Enforcement of Commercial Arbitration Agreements in the Federal Courts, (1930) 8 N.Y. U.L.Q. Rev. 238, 240. We find nothing to indicate that these parties intended to allow the Arbitration Committee to decide what disputes they had agreed to submit to arbitration.

Paragraph (d) of the contract provides that "Both buyer and seller hereby agree to submit [to arbitration] all questions of quality, complaints, disputes and/or controversies that may arise out of or in connec-

tion with this contract, in the following manner:" and also that "Differences in quality and all other differences as regarding the terms of this contract, including time of shipment, shall be arbitrated * * *". It is on these clauses that the seller relies. He insists that whether the parties agreed to arbitrate this question is a dispute or controversy arising "out of or in connection with this contract" and is a difference "regarding the terms of this contract" and, therefore, must be submitted to arbitration. In brief, the seller's argument is that these words make it obligatory to submit to arbitration the question whether the parties agreed to submit this particular question to arbitration. We do not believe this was the intention.

■■ A party is never required to submit to arbitration any question which he has not agreed so to submit, and contracts providing for arbitration will be carefully construed in order not to force a party to submit to arbitration a question which he did not intend to be submitted. Pumphrey v. Pumphrey, supra; Marchant v. Mead-Morrison Mfg. Co., 1929, 252 N.Y. 284, 299, 169 N.E. 386, 391; Eagar Construction Corp. v. Ward Foundation Corp., 1st Dept. 1938, 255 App.Div. 291, 7 N.Y.S. 2d 450. In view of the reluctance of courts to find that the parties to a contract agreed to submit to arbitrators the question of what they agreed to arbitrate, we do not believe the language here used intended such an agreement. The agreement was to arbitrate "all questions of *quality*, complaints, disputes and/or controversies" and "all other differences as regarding the terms of this contract, *including time of shipment*". (Italics supplied.) The italiicized words tend to show that the questions which the parties intended to submit were questions of the construction of the commercial terms of the contract, such as quality and time of shipment, and not problems of reconciling seemingly inconsistent provisions to decide whether a certain question had been submitted to them. It is probable that the parties never had any intention at all as to whether they wished a court or the arbitrators to decide what questions they had agreed to arbitrate. More likely it was not until the actual situation arose that either one considered the problem. It is impossible to say in such situation that they intended to allow the arbitrators to decide what they had agreed to submit.

■ In the Pumphrey, Bullard, Kelley and Piercy cases the language of the arbitration clauses provided for the submission of "all disputes". In spite of this breadth of language, all of these cases held that it was the duty of the court rather than the arbitrators to pass upon the question whether the contract provided that a certain dispute be submitted to arbitration. Only in the Kelley case is it suggested that it can be a question for the arbitrators if the contract expressly so provides. Willesford v. Watson, supra, was the only case found where the court left the question to the arbitrators, and that decision has had a very limited application. Cf. De Ricci v. De Ricci, [1891] P. 378, 389, 391; Piercy v. Young, supra. It is our opinion that the language used in the contract in the instant case was not intended to require the buyer to submit to the Arbitration Committee the question whether it had agreed to arbitrate the difference in value when it was furnished with a Rice Millers' Association certificate showing the rice shipped to be of an inferior quality. The buyer has a right to have the regularly constituted courts decide what questions he has agreed to submit to arbitration.

The construction of the contract is a difficult one, but it is our considered opinion that the buyer never intended or agreed to arbitrate the difference in value between the grade or quality of rice ordered and that shipped and to accept inferior goods at an allowance when a certificate of the Rice Millers' Association was furnished by the seller and showed the rice shipped to be of an inferior grade.

■ Arbitration contracts are to be interpreted according to the ordinary rules governing the interpretation of contracts. Pumphrey v. Pumphrey, supra; Britex Waste Co. v. Nathan Schwab & Sons, 1940, 139 Pa.Super. 474, 12 A.2d 473. No one can be forced to arbitrate unless the dispute is within the precise terms of the agreement to arbitrate. In re Kelley, supra; Eagar Construction Corp. v. Ward Foundation Corp., supra. But the contract in question is ambiguous and vague in the extreme on the particular point here in question.

Paragraph (g) of the contract, providing for sales on description, similar to the sale here made, expressly provides that "Rice Millers' Association Certificate, when furnished, shall be final as to quality, condition and grade". It also seems to us significant that that portion of the contract

comprising the particular terms inserted in the standard form required the furnishing of such a certificate providing that "R.M.A. —Certificate to be final as to quality, grade and conditions". Both parties admit that the certificate is final as to quality, condition and grade; but the buyer maintains that if the certificate shows an inferior grade it is entitled to reject the shipment while the seller insists that though it precludes the arbitrators from finding that the grade is the one ordered, they can still pass upon the question of the difference in value between the grade ordered and that shipped. The seller does not contend that the rice shipped was the grade ordered. It recognizes the conclusiveness of the certificate. The question then is not whether the certificate is conclusive, but whether when there is a conclusive certificate the buyer agreed to take inferior goods at an allowance awarded by arbitrators.

When arbitrators pass upon the quality and grade it is not unusual to provide for an allowance to be made if the goods are only slightly inferior to those ordered. Phillips, Rules of Law or Laissez-faire in Commercial Arbitration, (1934) 47 Harv. L.Rev. 590, 599–600. This would seem particularly practical in the rice trade where the difference is extremely slight between poor "Extra Fancy Arkansas Japan" rice and excellent "Fancy Japan" rice, and when, as here, the arbitration was to take place in Puerto Rico. The expense of returning rice which was only slightly inferior would often far exceed the difference in value, and in the general interest of the business it would be far more practical to provide, as here, that the buyer should accept the goods at an allowance if within a certain range.

But the same reasons do not support the contention that it would be as practical to follow the same procedure when a Rice Millers' Association certificate is bargained for and furnished. There is little evidence before us showing what procedure is followed when such a certificate is furnished. The seller in its brief points out that rice is graded at the mill according to the grades recognized by the Department of Agriculture and the Rice Millers' Association. Apparently, sometimes the Association and the mill do not agree on the classification, for the seller says that it is "quite probable, that at the mill it was graded 'Extra Fancy' and that the shipment was embarked before the R.M.A. certificate was at hand". There is nowhere any suggestion that the seller wilfully sent an inferior grade of rice, but it seems to us that he sent inferior rice at his peril. The contract provided for a Rice Millers' Association certificate. This was furnished by the seller, and the certifying was done before the rice was shipped. A copy of the certificate was apparently sent to the seller, probably after the shipment was embarked. Had the certificate shown that the rice was of the grade ordered, the buyer would have had no alternative but to pay the purchase price and accept the goods. Cf. P.R. Comp.Rev.Stat. & Codes (1913) § 7886; Louisiana State Rice Milling Co. v. Successors of Armstrong Brothers, 1925, 34 P.R.R. 42. It could not say it was inferior rice and demand an allowance. Since the certificate is furnished by the seller and the certification is made before the shipment is embarked, the seller has or can have an opportunity to protect itself by withholding shipment until it receives a certificate assuring it that the grade is proper or until it has substituted a proper grade for one certified to be inferior. That this procedure was not followed in this instance cannot put the seller in a more fortunate position. Since the seller has an opportunity to protect itself at small expense before shipment to Puerto Rico, there is little reason for a buyer who has bound itself to accept rice if shown by the Rice Millers' Association certificate to be the proper grade, also to bind itself to accept rice certified to be inferior even though it is given an allowance. In most instances the buyer does not want inferior goods at an allowance; it wants the goods it ordered or none at all.

The wording of the contract appears to support this position. As pointed out above, the terms of the contract required a certificate which was to be final as to quality, grade and conditions. The arbitration clause also provided that "All questions of quality" were to be submitted to arbitration. Where there is a conflict between a clause providing for arbitration and one providing for a conclusive certificate, it is the duty of the court to attempt to reconcile both clauses. Uvalde Asphalt Paving Co. v. Central Union Stockyards Co., 1913, 84 N.J.L. 297, 86 A. 425; Lloyd Bros. v. Milward, 2 Hudson's Building Contracts (4th ed. 1914) 267 (Ct.App. 1895); Clemence v. Clark, ibid., at 54 (C.P. 1880); cf. Concord Apartment House Co. v. O'Brien, 1907, 228 Ill. 360, 81 N.E. 1038. It seems clear that there can be no arbitration for quality, condition or grade when

there is a certificate furnished since a specific clause over-rides a general one. and a specific tribunal such as the Rice Millers' Association takes precedence over the general one for those matters referred to it. Curran v. Philadelphia, 1919, 264 Pa. 111, 107 A. 636; Henry v. Lehigh Valley Coal Co., 1906, 215 Pa. 448, 64 A. 635. The contract must be construed as a whole and all of its parts reconciled as far as possible. Childs Lumber & Mfg. Co. v. Page, 1903, 32 Wash. 250, 73 P. 353. Thus, the contract must be taken to mean that there must be arbitration for all differences of quality, condition and grade *except* when there is a Rice Millers' Association certificate. Surely, if the certificate showed the rice to be the grade ordered, the seller would never contend that the buyer could require an arbitration for difference of grade and take the rice at an allowance. Cf. Matter of Bullard, 1st Dept. 1924, 210 App.Div. 476, 479, 206 N.Y.S. 335, 338, affirmed, Bullard v. Grace Co., 1925, 240 N.Y. 388, 148 N.E. 559. To allow this would nullify the certificate entirely. By the same reasoning, the seller cannot claim an arbitration for difference of grade where the certificate shows the rice to be inferior.

But the seller maintains that it did not want an arbitration for difference of grade but only one to find the difference in value between the rice ordered and that shipped. Under what circumstances, then, did the parties agree to arbitrate this difference and under what circumstances did the buyer agree to take inferior goods at an allowance of not over one-fifth of one cent per pound?

Nowhere is there any separate provision for the making of an allowance by arbitration when a conclusive certificate is furnished. The provision for an allowance is obviously concerned with arbitrations for difference in quality and grade. All of the details in paragraph (d) deal with the procedure for arbitrations for difference in quality. It provides for storage of rice pending arbitration, for the drawing of samples from "the entire lot of rice being arbitrated", which could only refer to arbitrations for difference in quality or grade, for the sealing of samples in case of an appeal, and for notification to the parties and the Rice Millers' Association of the findings of the arbitrators. The first mention of an allowance then follows in an agreement by the buyer "to accept and pay for the merchandise in accordance with the findings of the arbitration committee of first instance, immediately on receipt of notice of the finding of said committee, providing the allowance is not over one-fifth of one cent per pound". But the Arbitration Committee can make no finding as to quality or grade when there is a conclusive certificate, for the matter has been withdrawn from arbitration. The normal meaning of the words appears to be that the committee is to give notice of its findings as to quality or grade as well as of the allowance made, if any.

This opinion is fortified by the wording of the succeeding paragraph dealing with appeals from the findings of the Arbitration Committee of first instance. Here, an allowance is mentioned for the second time in the following words: *"In case of arbitration for difference of grade,* where the difference is not over one-fifth of one cent per pound, *the buyer shall accept the goods at the allowance."* (Italics supplied.) We have already seen that there can be no "arbitration for difference of grade" when there is a conclusive Rice Millers' Association certificate. It is only where there need be such arbitration that the buyer has agreed to take inferior goods at an allowance. Cf. Matter of Bullard, supra. The certificate was to be completely final as to quality, condition and grade; there was nothing to arbitrate. The words of the Supreme Court of Puerto Rico in Louisiana State Rice Milling Co. v. Successors of Armstrong Brothers, supra, 34 P.R.R. at page 50, involving a very similar Rice Millers' Association contract for the sale of rice by a Louisiana corporation to a Puerto Rican partnership, seem particularly apt:

"And if the quality of the rice delivered was not that specified in the contract, the buyer was justified in refusing to receive it. Article 327 of the Code of Commerce provides as follows: 'If the sale takes place by samples or by a fixed quality known in commerce, the purchaser cannot refuse to receive the articles contracted for, if they conform to the samples or quality mentioned in the contract.' And if he is bound to receive them in such a case by mandate of the law, it is clear that he is not so bound when the condition is not complied with."

It is our opinion that the proper construction of this contract is that the buyer need not submit to arbitration the difference in value when the rice shipped is certified by the Rice Millers' Association to

be inferior in grade to that ordered nor need it accept the rice at an allowance. It is entitled to refuse to accept the rice as not a proper delivery under the contract.

We understand the argument of the seller that the certificate is only conclusive as to quality, grade and condition and simply withdraws those questions from the arbitrators, leaving with them the question of allowance for difference in value. However, we do not consider this contention to be borne out by the wording of the phrases providing for the allowance. The contract does not read "in case of difference of grade where the difference is not over one-fifth of one cent per pound the buyer shall accept the goods at the allowance" but reads "in case of *arbitration* for difference of grade", which has an entirely different meaning. There can be no "arbitration for difference of grade" where there is a conclusive certificate. Paragraph (e) likewise made particular provisions for payment of costs when the arbitration was for difference in quality, showing that when questions of quality, grade and condition were arbitrated in Puerto Rico, special rules were in effect.

We cannot accept the buyer's argument that the arbitration provision only applies when the sale was by sample. It is clear that a dispute as to difference in quality, grade or condition must be submitted when rice is ordered by description as well as when ordered by sample. The situation appears to be that where there is such a dispute and no final certificate was furnished at the point of shipment, the arbitrators must decide whether the rice shipped is or is not the quality or grade contracted for, and if not, whether the difference in value is so slight that the buyer must accept it. But the parties have also set up an alternative final tribunal at the point of shipment to decide whether the quality and grade conform to the contract. When this expert tribunal is used, as it was here, there is nothing to be arbitrated. If the certificate favors the seller, the buyer must accept; and if the certificate discloses the rice to be inferior to that ordered, the buyer may refuse to accept it. The certificate settled everything quickly, expertly, and before shipment. There should ordinarily be no need for an allowance as the seller can substitute rice which will comply with the contract. It would be strange, indeed, if the contract contemplated that rice certified not to conform to contract specifications was, after such certification, to be shipped from Louisiana to Puerto Rico and forced upon an unsatisfied buyer following an arbitration before a new body as to the allowance to be made because of the inferior quality of the rice. And it should be remembered that the allowance might be over one-fifth of one cent per pound and the rice could be refused by the buyer. It is our opinion that there was to be no arbitration and no allowances unless the rice arrived in Puerto Rico uncertified.

The buyer was justified in refusing to accept the rice and in refusing to submit to arbitration the question of the difference in value between the rice contracted for and that shipped. In the view we take of the case it is unnecessary to pass upon the difficult questions whether an arbitration contract is enforcible in Puerto Rico or whether the contract provisions were valid preventing any complaint and requiring payment of the full invoice price if arbitration was not requested within five days after discharge of the rice from the ship.

The district court erred in finding the buyer indebted to the seller in the amount of $4250 because of failure to accept the rice shipped. The rice, having been sold to the buyer at public auction for $2,979.74, is now the property of the buyer, and the proceeds from the sale were properly ordered to be paid over to the seller. However, the seller is not entitled to a deficiency judgment since nothing is owing to the seller from the buyer as a result of this contract.

The judgment of the District Court is reversed with costs to the appellant, and the case is remanded with directions to enter judgment in conformity with this opinion.