**BROOKSIDE MILLS, Inc. v. AVON CONVERTING CO., Inc.**

No. 24, Docket 22054.

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1951.

Decided Oct. 19, 1951.

Epstein & Ratzkin, New York City, Thomas Epstein and Jack L. Ratzkin, New York City, of counsel, for appellant.

Erwin Feldman, New York City, and Leon H. Klingher, Long Island City, N. Y., of counsel, for appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

SWAN, Chief Judge.

The parties to this litigation executed a "Salesnote" which contained a provision for the arbitration of "any controversy arising under, or in relation to, this contract." Under the contract Brookside, the seller, was to manufacture and deliver to Avon, the buyer, 90,000 yards of "firsts" quality cotton textile fabrics woven according to technical terms of description and fibre identification set forth in the Salesnote and according to patterns (designs of colors and stripes) furnished by the buyer.

Asserting that Brookside had committed a breach of the contract by selling "tailings" (yardage manufactured in excess of contract quantity) to other purchasers without first offering them to it, Avon demanded arbitration of the controversy before the General Arbitration Council of the Textile Industry.[1] Brookside then moved in the district court for a permanent stay of the arbitration proceeding, federal jurisdiction being asserted both on the ground of diverse citizenship and under the United States Arbitration Act, 9 U.S.C.A. §§ 1–15.[2] After a hearing at which testimony was taken, the district court rendered an oral opinion denying the stay. Brookside appealed.[3]

The appellant argues that the contract between the parties contained no provision forbidding the sale of "tailings" to others without first offering them to Avon; therefore the issue presented to the arbitrators was not a "controversy arising under, or in relation to," their contract, and the court erred in permitting the arbitration to proceed. See Kallus v. Ideal Novelty & Toy Co., 292 N.Y. 459, 55 N.E.2d 737; B. Fernandez & Hnos, S. En C. v. Rickert Rice Mills, Inc., 1 Cir., 119 F.2d 809, 814, 136 A.L.R. 351. Whether the controversy presented for arbitration was one within the scope of the arbitration clause depends on whether the goods to be woven by the seller were "confined patterns." The quoted words do not appear in the contract but Judge Leibell on the basis of expert testimony, found that the goods were of this class. We agree. Neither the contract executed by the parties, nor the Standard Cotton Textile Salesnote, which was incorporated by reference, specifically prescribes the buyer's rights regarding confined patterns. Section 3 of Article IX of the Standard Salesnote, however, provides that "Contingencies, not covered in said contract, this instrument or any appended specification, shall be interpreted in accordance with the established rules and customs of the trade, particularly with those rules and customs which have been formally approved by authorized bodies, representing both buyer and seller."[4] Among the customs of the trade set forth in the Worth Street Rules, in the section entitled "Definitions and Trade Customs," is one which provides that in the sale of "confined patterns" the seller must offer "tailings" to the buyer before selling them to others. Hence the contract of the parties must be interpreted in accordance with this custom unless the contract contains some specific provision inconsistent therewith.[5] The appellant argues that the custom is inconsistent with the contract provision: "Tailings not exceeding 10% may be applied if this contract is not renewed." We think not. This clause gave the seller a "put"—an option to require the buyer to take that much of the tailings. It says nothing as to what shall happen if the seller does not elect to exercise his option. That was a con-

---

1. The arbitration clause provided: "If the parties are unable to agree respecting the time, place, method or rules of arbitration, then such arbitration shall be held in the City of New York [in] accordance with the laws of the State of New York and the rules then obtaining of the General Arbitration Council of the Textile Industry * * * ". Such rules are found in the pamphlet entitled "Worth Street Rules Effective April 17, 1941, With 1947 Revision of Arbitration Rules and Panel."

2. See Conley v. San Carlo Opera Company, 2 Cir., 163 F.2d 310.

3. A motion to stay the arbitration pending the appeal was denied by this court last June. As the arbitration proceeding is still pending, the appeal has not become moot.

4. The Worth Street Rules were approved and promulgated by the leading trade associations representing all the divisions of the cotton textile industry.

5. Section 2 of Article IX of the Standard Salesnote provides: "If the contract, of which this instrument with its supplementary specification, if any, has become a part, contains any specific provision inconsistent with any of the provisions contained in this instrument or any such supplementary specification, such specific provision in the contract shall govern and any inconsistent provision in this instrument, or in any such supplementary specification, shall have no application."

tingency not covered in the contract but provided for by the custom which the Standard Salesnote makes applicable to contingencies not covered. This is the conclusion reached by Judge Leibell and it is supported by the testimony.

Order affirmed.