**THEOFANO MARITIME CO., LIMITED**

v.

**9,551.19 LONG TONS OF CHROME ORE ON BOARD THE ALIAKMON et al.**

**GIRDWOOD**

v.

**THEOFANO MARITIME CO., LIMITED.**

No. 3407.

United States District Court
D. Maryland.
Aug. 13, 1954.

McNutt & Nash, New York City (James E. Freehill, New York City, advocate), Ober, Grimes & Stinson, Baltimore Md. (Southgate L. Morison, Baltimore, Md., advocate), for libellant and cross-respondent.

Bogle, Bogle & Gates, Seattle, Wash., and Haight, Deming, Gardner, Poor & Havens, New York City (Richard G. Ashworth, New York City, advocate), and Niles, Barton, Yost & Dankmeyer (Theodore R. Dankmeyer, Baltimore, Md., advocate), for respondent and cross-libellant.

THOMSEN, District Judge.

This case is before the court on the petition of David R. Girdwood, doing business as Girdwood Shipping Company (Charterer of the SS Aliakmon), respondent and cross-libellant, to confirm an award of arbitrators, and the cross-petition of Theofano Maritime Company, Ltd. (Owner of said vessel), libellant and cross-respondent, to modify and correct said award by eliminating an allowance to Charterer of $4,387.50, interest at 3% per annum on collateral deposited by Charterer with the bonding company which furnished the stipulation (bond) filed herein to release the cargo and sub-freights of the SS Aliakmon from attachment under the libel.

By charter party, dated January 11, 1951, Owner chartered the SS Aliakmon to Charterer for a minimum period of six months and a maximum period of eight months, upon the terms and conditions set forth therein. Clause 17 of the charter party provided:

"That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

Clause 18 provided:

"That the owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Average contributions, * * * ".

Owner made demand upon Charterer for alleged unpaid charter hire and other claims, which Charterer refused to pay, contending that Owner was indebted to it in an amount in excess of Owner's proper claims.

Owner then filed a libel in this court against the cargo and sub-freights of the SS Aliakmon and against Charterer, reserving its rights to have the disputes set forth in the libel referred to arbitration, as authorized by clause 17 of the charter party and the provisions of the Federal Arbitration Act, 61 Stat. 669, 9 U.S.C. §§ 1–14.

A stipulation for value (bond) in the amount of $65,000, with interest, was filed on behalf of Charterer.

Charterer filed an answer to the libel and a cross-libel wherein it prayed that the original suit be stayed pursuant to the 50th Admiralty Rule, 28 U.S.C. until proper security be given on behalf of Owner, and made various claims against Owner under five separate causes of action. The important paragraph of the fifth cause of action of the cross-libel read as follows:

"That as a result of the filing of the original Libel herein against the cargo of the ALIAKMON and her sub-freights and the necessity on the part of Cross-Libelant to post bond for the release of said cargo and sub-freights from said attachment, Cross-Libelant has been forced to incur considerable expense in defending; namely, counsel fees, court costs, bond premium and incidental expenses. By reason of the premises, Cross-Libelant has sustained damages in the estimated amount of $3,650.00, as nearly as can now be estimated, no part of which has been paid although duly demanded."

Charterer also reserved his rights to arbitration.

A stipulation (bond) in the amount of $28,000, with interest, was filed on behalf of Owner. Owner filed exceptions to the cross-libel, and on June 12, 1952, Judge Coleman entered an order in

which, *inter alia,* he sustained the exceptions to the fifth cause of action in the cross-libel without leave to amend.

Thereafter, on Charterer's petition and Owner's consent, Judge Coleman entered an order dated February 13, 1953:

"That the parties hereto proceed forthwith to arbitration of the Charter Party disputes set forth in the Libel and Cross-Libel herein, pursuant to clause 17 of the Charter Party, dated January 11, 1951 * * and the terms and provisions of the Federal Arbitration Act * * * and that this Court hereby retains jurisdiction of the proceedings herein for the purpose of entering its decree on the award of the Arbitrators, and for such other purposes as may be necessary or requisite under the circumstances."

Owner presented claims of more than $50,000 to the arbitrators, and Charterer presented claims of more than $100,000, including (1) a claim of $8,775 for interest at 6% per annum on the $65,000 cash deposited by Charterer with the bonding company as collateral for the issuance of the stipulation (bond) to release the cargo and sub-freights from attachment under the libel; (2) a claim of $1,950 for three years premium on said stipulation (bond); and (3) a claim for counsel fees and incidental expenses. Owner objected to the allowance of these three claims on the ground that they involved matters which had not been submitted to the arbitrators by agreement between the parties or by the order of this court dated February 13, 1953. Owner presented no similar claims.

The arbitrators made an award in which they allowed the claim for "interest on bond security" in the amount of $4,387.50, disallowed the claim for premium on the bond and disallowed the claim for counsel fees and incidental expenses. The arbitrators allowed some other claims of Charterer and some claims of Owner. The parties agreed that under the award as rendered, there was on August 6, 1954, "a balance in favor of Owner of $4,928.89, for a total with interest of $5,300.87", subject to a conditional allowance in favor of Charterer of $12,665.81, contingent upon its being held liable in a suit for the value of cargo jettisoned on one of the voyages made by the SS Aliakmon. However, Owner's P & I underwriters have agreed to furnish Charterer with a usual letter of indemnity in lieu of a surety bond, which Charterer has agreed to accept in settlement of the conditional allowance.

The arbitrators directed that arbitration fees of $3,750 per man, totalling $11,250, plus stenographic expenses as incurred, be shared equally by Owner and Charterer. The arbitrators did not attempt to decide by whom the costs in this court proceeding should be paid.

Charterer prays for an order confirming the award of the arbitrators and judgment thereon in accordance with the terms of said award, with costs of this proceeding. Owner prays for an order modifying and correcting said award by eliminating the allowance to Charterer of $4,387.50 (interest on collateral deposited with the bonding company) and a decree for $9,688.37 in favor of Owner against Charterer.

Charterer contends that clause 17 of the charter party requires the submission to arbitration of all disputes arising out of the charter party; that "all questions connected with the suit by the owner to enforce a lien under the charter party arise out of the charter party"; and therefore "the question of interest on the collateral was submitted to the arbitrators" under said clause 17; that the dispute submitted to the arbitrators were not limited or defined by the order of this court dated February 13, 1953; and that the arbitrators were authorized to allow the claim for interest on the collateral either as a loss to Charterer arising out of the charter party, or as costs in the arbitration proceedings or in this suit.

■ Clause 17 of the charter party provides for arbitration at New York, and that for the purpose of enforcing any award, the agreement may be made

a rule of the court. The parties are agreed that the United States Arbitration Act, 9 U.S.C. §§ 1–14, controls Section 8 of that Act provides:

"If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

The purpose of this section "is to allow an aggrieved party the benefit of security obtained by attachment; to achieve this end the arbitration is made a phase of the suit in admiralty". The Sydfold, D.C.S.D.N.Y., 25 F.Supp. 662, at page 663. " * * * Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court." The Anaconda v. American Sugar Co., 322 U.S. 42, at page 46, 64 S.Ct. 863, 866, 88 L.Ed. 1117.

■ "According to the usual course of admiralty proceedings," referred to in Section 8 of the Act, a *res* is attached. If the claimant wishes to release the *res* from attachment before final decree, he may do so by depositing cash with the clerk or by giving a stipulation or bond. Admiralty Rule 7 provides:

"If costs shall be awarded by the court to either or any party then the reasonable premiums or expense paid on all bonds or stipulations or other security given by that party in that suit shall be taxed as part of the costs of that party."

■■ If cash is deposited instead of a stipulation or bond, interest not exceeding the amount of the premium which would have been paid for a bond may be taxed as costs in lieu of the bond premium. Benedict on Admiralty (6th Ed., A. W. Knauth), Vol. 3, Sec. 431, p. 227; The Wolsum, 5 Cir., 14 F.2d 371. If the claimant gives a bond, it is entirely a matter between him and the bonding company whether or not he gives that company any collateral, and if he does, whether that collateral be cash, bonds yielding 2½%, or other securities yielding a higher rate of return. Any such interest or dividends would, of course, belong to the depositor. "According to the usual course of admiralty proceedings," any possible loss to a claimant from having to give collateral to the bonding company is not recoverable by him as damages or as taxable costs. None of the able and experienced advocates from New York and Baltimore who appeared for the respective parties at the hearing had ever heard of a case in which such an allowance had been made.

Since clause 17 was admittedly inserted in the charter party with the United States Arbitration Act in mind, Charterer cannot now say that the parties contemplated any such claim.

■ Clause 17 evidently referred to disputes arising under the charter party, not to disputes about costs and expenses arising out of some possible litigation between the parties. If the parties had intended that the arbitration clause of the charter party should permit the arbitrators to allow such an item, they should have specifically so provided. It was agreed by counsel at the hearing that some charter parties contain a clause permitting the arbitrators to award costs, including a reasonable allowance for attorneys' fees.

In B. Fernandez & Hnos, S. En C., v. Rickert Rice Mills, 119 F.2d 809, 814, 136 A.L.R. 351, the First Circuit Court of Appeals, in an opinion by Circuit Judge Mahoney, said:

"It is now well settled that the question of the construction of a con-

tract to determine what questions the parties thereto agreed to submit to arbitration is one for the court to decide and not for the arbitrators. * * *

"A party is never required to submit to arbitration any question which he has not agreed so to submit, and contracts providing for arbitration will be carefully construed in order not to force a party to submit to arbitration a question which he did not intend to be submitted."

■ Charterer's claim for interest on the cash collateral which it deposited with the bonding company was not a matter in dispute arising out of the charter party. If there were any doubt about this question, that doubt would be settled by Judge Coleman's order dated February 13, 1953, which was prepared by proctors for Charterer and ordered "that the parties hereto proceed forthwith to arbitration of the Charter Party disputes set forth in the Libel and Cross Libel herein, pursuant to clause 17 of the Charter Party * * * and the terms and provisions of the Federal Arbitration Act * * *". Judge Coleman's order of June 12, 1952, had eliminated from the cross-libel the fifth cause of action, which made claim for Charterer's counsel fees, court costs, bond premium and incidental expenses. "Where arbitration results from a court order, the wording of the order and not the original agreement determines the precise scope of the arbitrators' authority and of the matters submitted to arbitration." Williston on Contracts (Rev.Ed.), Vol. 6, Section 1929, p. 5396.

Nor would the arbitrators have authority to allow the item in controversy as part of the costs in the arbitration proceeding or in this suit.

■ Both parties cited old New York cases on the question whether arbitrators in New York have the power to direct by whom the fees of the arbitrators and the expenses of the arbitration proceedings shall be paid. E.g. Trustees of Village of Amsterdam v. Vanderveer, 1847, 4 Denio 249. The attention of the court was also called to Section 1457 of the New York Civil Practice Act, which provides that "unless it is otherwise expressly provided in the submission or contract, the award may require the payment, by either party, of the arbitrators' fees, not exceeding the fees allowed to a like number of referees in the supreme court; and also their expenses." In the absence of agreement or statute, the general law would appear to be that the parties are jointly and severally liable for the payment of arbitrators' fees. 3 Am.Jur. 927.

" * * * Arbitration agreements relate to the law of remedies, and their enforcement, whether at common law or under the broader provisions of the arbitration acts, is a question of remedy to be determined by the law of the forum, as opposed to that of the place where the contract was made or is to be performed". 3 Am.Jur. 901. Arbitration affects only the remedy, and New York decisions do not control. Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381, 383. But the question of conflict of laws is not important here. The arbitrators directed that their fees and the stenographic expenses should be shared equally by Owner and Charterer, and neither party has objected to that ruling. The arbitrators allowed nothing for counsel fees and incidental expenses either before the arbitrators or in court. I see no possible argument which would make interest on the cash deposited by Charterer with the bonding company a part of the costs or expenses of the arbitration proceedings.

■ Nor can the allowance of that item by the arbitrators be justified as an allowance of part of the costs in this court proceeding. There is some authority that where the submission is of a pending suit, an award of costs in that suit, as distinguished from costs of the arbitration, may be made by the arbitrators. 3 Am.Jur. 947; Broughton v. Seamans, 1876, 9 Hun. 392; Van Alstyne v. Wimple, 1825, 4 Cow. 547, 8 N.Y. C.L.R. 482. As we have seen, however, the matter is one of remedy, governed by federal law. Under the United States Arbitration Act, the arbitrators have no

power to direct how the costs in this court proceeding should be apportioned. That is a function of the judge. See The Scotland, 118 U.S. 507, 6 S.Ct. 1174, 30 L.Ed. 153.

In the case at bar, the arbitrators made no effort to direct how the court costs should be apportioned. They disallowed Charterer's claim for bond premiums, but, for the reason stated above, that ruling is not binding on this court. They did not indicate that they thought interest on the cash collateral deposited with the bonding company was part of the court costs. If they had so indicated, they would have been clearly wrong. Admiralty Rule 7; The Wolsum, 5 Cir., 14 F.2d 371. "The term 'costs' does not include items of damage, nor counsel fees". Benedict on Admiralty (6th Ed., A. W. Knauth), Section 422, Vol. 3, p. 196.

Owner's petition for an order modifying and correcting the award of the arbitrators by eliminating the allowance to Charterer of $4,387.50 (interest on collateral deposited with bonding company) should be granted, each party to stand its own costs in this court.

I will sign an order giving effect to this ruling.