Arbitration between Hugo STINNES, G.m.b.H., Petitioner

and

PAULAR MARITIME AGENCY CORP., Respondent.

United States District Court S. D. New York. March 25, 1957.

Bigham, Englar, Jones & Houston, New York City, for petitioner.

Nelson, Healy, Baillie & Burke, New York City, for respondent.

BICKS, District Judge.

The parties to this proceeding are signatories to a charter party by the terms of which the vessel "Christina Pezas, or at Owners' option Liberty substitute in same position on any voyage" was chartered for the carriage of full cargoes of coal between certain United States east coast ports and specified continental ports. It was provided therein (clause 23) that "This Charter Party is to remain in effect for 25 consecutive voyages, starting with the first voyage May 1/31, 1955, vessel always returning in ballast between trips. Cancelling date for last voyage May 31, 1957." Clause 3, in part, recites "If any dispute or difference should arise under this Charter same to be referred to three parties in the City of New York, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or that of any two of them, shall be final and binding, and this agreement may, for enforcing the same be made a rule of Court. Said three parties to be commercial men."

Disputes arose as to (i) the extent of the Owner's right to substitute Liberty vessels for the S.S. Christina Pezas and (ii) the meaning and intendment of clause 23. The charterer invoked the arbitration clause and such proceedings were had before the arbitrators that on July 12, 1956 they rendered an award favorable to the contentions of the owner finding that he had the right to freely substitute so-called Liberty ship vessels for the "Christina Pezas". They omitted, however, to construe clause 23. There then followed an interchange of correspondence between counsel for the respective parties—in form addressed to the arbitrators—setting forth their views on the propriety of the omission. Charterer's counsel requested that the award "be clarified as to the following point: Is the charterer entitled to 25 consecutive voyages under the charter party * * *". The owner's counsel countered with the statement "that the question of the number of voyages to be performed under the charter was not a 'dispute' in being within the meaning of the arbitration clause, and was therefore not a proper matter for decision by the arbitrators".

The arbitrators disposed of the charterer's request for a clarification of their award in a supplemental award dated September 19, 1956 reading as follows:

"Arbitrators have been requested to clarify their decision (July 12, 1956) to determine whether 'the Charterer is entitled to twenty-five (25) consecutive voyages under the Charter Party dated March 29, 1955'.

"The Arbitrators are unanimous in their decision that the point raised by Counsel for the Charterer is premature and is not, therefore, within the province of this arbitration."

Construction of clause 23 is of substantial economic importance to the parties.

The market rate for charters of the kind involved in this proceeding has increased over 100%—translated in terms of cost of ocean shipment of coal it approximates 50 shillings per ton. Upon the answer to the problem whether the owner's obligations come to an end on May 31, 1957 without regard to the number of voyages completed by that date, as the owner contends, or whether the charter party is to remain in effect for 25 consecutive voyages as urged by the charterer, rides a considerable sum of money. If the construction urged by the charterer is incorrect a present determination will enable it to make provision for transshipment of the quantity of coal it is committed to purchase in the U. S. and deliver on the continent.

The question presented on the application now before the Court is whether the meaning of clause 23 is an arbitrable dispute. To be sure other issues have been raised,[1] but as was indicated by the Court on the argument and concurred in by counsel, they need not concern us if the application be treated as one to compel arbitration under § 4, Title 9 U.S.C.A. Owner's counsel states in his brief that such a motion would be opposed on the merits and should be denied for the reasons urged by him. We proceed, therefore, to consider the merits.

That the parties are in disagreement as to the meaning of clause 23 is patent. Indeed, the owner's brief expressly urges one construction and the charterer's another.

■■ The suggestion that there can be no question of an anticipatory breach of the contract because the owner has not declared whether it will or will not perform any specified number of voyages is unrealistic in view of the position it takes as to the meaning of the contract. An insistence that it is under no legal obligation to perform under a contract which in the light of hindsight was improvidently entered into, is as unequivocal a declaration that it will not perform as the words "I will not perform". To ascribe to the owner under the circumstances here present a purpose to provide a ship for a single voyage in excess of the minimum number required under the contract would incorrectly assess the mores of the market place. A determination of the meaning of the disputed clause will serve an extremely useful purpose in clarifying and settling the respective rights and obligations of the parties and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. Under existing conditions in the charter market the charterer is entitled to such relief presently and should not be required to await the pleasure of the owner.

The owner poses numerous hypothetical circumstances which, it is contended, demonstrate that the question is premature. It conjectures problems which may arise *in futuro* and have no bearing on the question whether a present dispute exists. They broadly fall within the category of events referred to as *force majeure*. Whether or not the happening of any such events would excuse performance of the owner's otherwise binding obligations bears no relevance to an inquiry into the nature and extent of its obligations.

■ The owner contends that the issue of whether or not the "25 voyage" question was premature under the terms

---

1. These other issues are: (1) the seasonability of the motion to vacate the award under § 12, Title 9 U.S.C.A.; (2) the applicability of the doctrine *"functus officio"* in respect to any action by the arbitrators after their award of July 12, 1956, which award was silent or the "25 voyage" question; (3) the legal effect of the so-called "supplemental" award of September 19, 1956; (4) whether the July 12, 1956 award of the arbitrators was legally sufficient under § 10, Title 9 U.S.C.A., *i. e.*, did the arbitrators either exceed their powers or so imperfectly execute them that a mutual, final and definite award upon the subject matter submitted was not made; (5) whether the July 12, 1956 award, by necessary implication of its silence concerning the "25 voyage" question, decided that question to be premature.

of the arbitration clause was submitted to the arbitrators, and that they determined that the question was not ripe for arbitral action. This determination, continues the owner, is dispositive of the matter and unreviewable by the Court. The error in this argument is its presupposition that the arbitrators were authorized to determine what questions they may decide, and that the parties submitted the question of "prematurity" to the arbitrators for their determination. Prematurity was urged upon the arbitrators by the owner not as a matter in dispute under the contract, but by way of answer to the charterer's arguments addressed to the merits of the construction issue. See B. Fernandez & Hnos., S. En C. v. Rickert Rice Mills, Inc., 1 Cir., 1941, 119 F.2d 809, 136 A.L.R. 351.

Motion to compel arbitration of dispute as to meaning of clause 23 granted. Settle order on notice.