Russell G. Hunt, J.
The claimant herein entered into a contract dated October 2, 1952, with the State, through the Department of Public Works, for the work of rehabilitation of the Governor’s hearing room on the second floor of the State Capitol at Albany. The completion date was stated to be December 15, 1952, but there is evidence that the claimant was not to be held to this date, and in fact the completion date was extended to March 23, 1954; the claimant testified that his work was completed before the end of December, 1952, except for the work on the doors, referred to below. The claimant commenced the work of the contract on October 8, 1952, and thereafter there arose differences between the parties over the interpretation of the contract as to certain work which the State called on the claimant to perform. The claimant refused to comply, whereupon the State ordered him to do the work, and the claimant alleges he then complied, but under protest. He now submits a claim wherein he seeks to recover $1,100 for the work of refinishing the entire wood ceiling of the hearing room which he alleges he was required to do, in violation of the contract and over his protest that this was not included in the work of the contract. In addition, claimant seeks to recover *682 $1,651.17 for being compelled to perform again the work of rehabilitating and hanging the hearing room doors after he alleges such work had been done, ápproved and accepted; and, also the sum of $2,796.20, being the final payment due claimant and which he refused to accept because, he alleges, the acceptance thereof, under the agreement, constituted a release of the claims above. The State concedes that claimant is entitled to this last amount.
The agreement sets forth that the claimant was “ to furnish the material and perform the labor required and necessary for construction work for rehabilitation of existing room No. 202, for the executive department, as shown on the drawings or specified, at the Capitol, Albany, New York, in accordance with specification No. 17469, addendum No. 1 dated August 20, 1952, and addendum No. 2 dated August 29, 1952 ”.
The agreement is on a printed form with the blanks filled in on the typewriter; the general conditions are printed; the specifications are printed in part and mimeographed as to other parts which particularly apply to the work of this contract; and the addenda are mimeographed. The printed forms are in general use by the State for its construction contracts and the typewritten and mimeographed parts contain the matter particularly applicable to this contract.
As a part of the specifications there is included a mimeographed section 19A entitled “ Mill & Cabinetwork ” (it is not captioned “ Standard Specifications ”). It calls for the rehabilitation of the entire wood ceiling in room No. 202 and it sets forth the particulars as to inspections and repair of beams, moldings and panels, amongst others. Immediately following the foregoing is a mimeographed page dated August 20, 1952, entitled addendum No. 1, referring to an unrelated matter, and, then follow three mimeographed pages, dated August 29, 1952, entitled “ Addendum No. 2 to Specification No. 17469, construction work for rehabilitation of existing room No. 202 ”, and a note thereon states: ‘‘ this addendum shall be attached to and form a part of specification No. 17469. Addendum No. 1 shall remain in force ”; it then states it is “ section 19A ’’ and to ‘‘ Disregard the entire section 19A as contained in the specification and use the following in lieu thereof ”, and, it then omits completely that part of the original mimeographed specification numbered ‘‘ section 19A ’’, referred to above, specifying the work on the wood ceiling. Furthermore, and immediately following the front cover of the contract, attention was again directed to the same addendum No. 1 and the same addendum No. 2 and there set forth in full. The contract drawings show *683 the detail of the wood ceiling as to beams, moldings and panels, amongst others, referred to in the original specification numbered section 19A.
The conflict between the parties was generated when the State called on the claimant to do the ceiling work and contended such work was not omitted from the new section 19A as set forth in addendum No. 2 and that it was a part of the work of the contract and embraced by the “ cabinet work ” and it pointed .to the drawings for the ceiling work as showing the intention that the work should be done; further, the State Architect asserted that pursuant to article 12, paragraph 50, of the general conditions, he had the power to decide “ the true meaning of the drawings or specifications on any point concerning the character, acceptability or nature of the several kinds of work or materials or construction thereof ”, whereupon he decided that the “ cabinet work on the ceiling ” had to be done and so informed the claimant.
The claimant, on the other hand, points out that while the ‘ ‘ wood ceiling ’ ’ work had been included in the original specifications, it had been removed by addendum No. 2, dated August 29,1952, which was also the date of the notice to bidders ,and was prior to the receipt by the State of bids on September 11,1952, and to the signing of the contract on October 2,1952; he disputes the assertion that “ cabinet work ” included the ceiling work; and he also refers to section 37 of article 68 of the printed general conditions which provides that where there is a discrepancy between the drawings and the specifications then the addenda are to be preferred in interpretation. A ‘‘ discrepancy ” exists ‘‘ where different parts of the same instrument or different instruments are in conflict with one another ” (Matter of Barrett, 209 App. Div. 217, 222).
When the specifications were made available to bidders, the original section 19A remained as a physical part thereof but the ‘‘ wood ceiling ’’ work had been eliminated by addendum No. 2 because all bidders were told to disregard “ the entire section 19A ’’; and, other changes were made which are not now material. Both the original section 19A and new section 19A referred to “ cabinet work ” (which was not defined), but, the “ cabinet work ” referred to in original section 19A excluded the ‘‘ wood ceiling ’’ because the latter was there treated separately and apart from the “ cabinet work ” and particular specifications were therein set up for the inspection, repair and refinishing of the ceiling. “ Cabinet work ” in new section 19A had no greater meaning than it had in the original; it did not refer to and did not embrace the “ wood ceiling ”.
*684 Where there is an uncertainty, conflict or ambiguity in an instrument, it is “ to be construed most strongly against the party who drew it ” and most favorably to the claimant and so as not “ to put one party at the mercy of the other ”, (Wilson & English Constr. Co. v. New York Central R. R. Co., 240 App. Div. 479, 483; Bintz v. City of Hornell, 268 App. Div. 742, 747, affd. 295 N. Y. 628.)
Accordingly, when the claimant examined the specifications prior to bidding he found a notice that in preparing his bid he was to disregard the original section 19A in its entirety and he was to be guided by the new section 19A; furthermore, he was notified that although the wood ceiling work was shown on the drawings, that, too, was to be disregarded because where a discrepancy existed between the specifications and the drawings the addenda were to govern interpretation. The claimant was entitled to read the proposal as excluding the ceiling work; “ the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms ” (Shirai v. Blum, 239 N. Y. 172, 179). I find that when the State added addendum No. 2 to its contract it thereby struck out all work respecting the wood ceiling and when it demanded that the claimant do the work over his protest, it thereby breached the contract. The breach of contract is not saved by the State Architect’s reference to ‘‘ paragraph 50 of article 12” as a basis in whole or in part for his order to the contractor to do the work; that reference is inadequate for the task assigned to it.
This is not the case where something is required ‘‘ which is so palpably and manifestly beyond the provisions of the contract that the contractor ” performs at his peril (Borough Constr. Co. v. City of New York, 200 N. Y. 149,157). This is the case where there was a reasonable basis for the demand and there was a doubt on the part of the contractor in respect to which he might have been mistaken if he refused to do the work. Therefore, he may perform under protest and “ subsequently recover damages because he has been so required even though it should turn out that the contractor was right and that the official had no right to call on him to furnish such materials and do such labor ” (Borough Constr. Co. v. City of New York, supra, p. 153).
The claimant is entitled to recover. The measure of his damage is the amount he expended for the work, namely, $1,000, plus the sum of $100 for the cost of overhead and profit, a total of $1,100. The reasonableness of this amount is not disputed and the award is in that amount.
*685 With respect to the second claim for extra work on doors Nos. 2-1 and 2-8, the mimeographed general description of the work states, under the title ‘‘ Removal Work”, that “wood paneled doors to be remade ”. Addendum No. 2 (section 19A) of the specifications requires the “ rehabilitation of existing doors Nos. 2-2 and 2-8 at the woodworking shop ”, and (contrary to the general description provision that all doors were to be remade) “ Door No. 2-1 shall be replaced with a new door ”, also, “ Remove door 2/8 * * * also door 2/2 * * * for complete rehabilitation. They are to be taken apart and reassembled ”, and defective parts and all hardware were to be replaced with new; also, “ door opening 2/1 * * * is to be replaced with a new door ”. There is no claim as to door No. 2-2. The evidence is that door No. 2-1 was not replaced with a new door but was remade with new and old materials pursuant to an informal understanding, possibly as a result of the conflict between the general description and the addendum as to what was to be done with respect to the door.
Doors Nos. 2-1 and 2-8 were sent by the claimant to an approved subcontractor for the millwork in Brooklyn, where they were worked on. The doors were returned to the Capitol in the latter part of December, 1952, but were not hung then because the new hardware had not arrived. In the first part of January, 1953, the State ordered the doors to be hung, using the old hardware. After the doors had been hung the new hardware arrived and the doors were taken down, the new hardware was installed and the doors were rehung. When the doors were hung they were then finished with varnish. Claimant’s testimony is that when the doors were first returned to the Capitol, they were not hung for several days, and during that time the State’s inspectors looked at the doors and thereafter ordered them hung and the varnish finish applied. The claimant assumed the work on the doors had been accepted, but this turned out to be not so, for by letter of March 16, 1953, the State informed him that “ Final inspection was held on this project today ” and door No. 2-1 was “ not according to specifications. Provide new door as required ”, and door No. 2-8 should be returned ‘‘ to shop for rehabilitation as specified, refinishing entire door ” and specifying a number of defects to be corrected; also, other finish-up work was required to be done. Testimony was introduced by the State as to the kind and nature of the defects and there was no testimony to the contrary ; the claimant took the position that the doors had been accepted when he was ordered to hang them. The claimant replied to the letter of March 16 that door No. 2-1 had been *686 remade instead of replaced on instructions from the State’s representatives and that door No. 2-8 had been completely rehabilitated and nothing further could be done. The State thereupon rejected the work as not satisfactory, and the claimant thereafter wrote that he would do the work “ according to your directions * * * said work is extra and not called for by the contract ”. The evidence shows that thereafter the doors Nos. 2-1 and 2-8 were taken to the millworker in Brooklyn who sent them to another millworker in New York City, where the defects were removed to the satisfaction of two State inspectors who went there to inspect and who gave their approval; the doors were returned and hung. No new door was supplied in place of No. 2-1. Final inspection was made and approval of the work of the contract given on October 2, 1953.
Article 17 of the general conditions of the contract provides that where materials or work are found to be defective they shall be removed and replaced; further, that ‘ ‘ no previous inspection or certificate of payment shall be held as an acceptance of defective work or materials or to relieve the contractor from the obligation to furnish sound materials and to perform satisfactory work in accordance with the contract requirements ”. I find that the work of rehabilitation was defective and not in accordance with the specifications when the doors were hung in January, 1953, and that the State was within its .rights when it rejected the performance and required satisfactory work to be done in accordance with the contract.
There is some testimony that the claimant protested the doing of the extra work on the doors, but this was with respect to the State’s letter and demand of March 16, 1953; however, in his letter of July 14, 1953 to the State he wrote that “ said work is extra and not called for by the contract ’ ’. The work being defective, the protest was unavailing. If the work were not defective, then there would be no doubt that the State’s demand exceeded the obligation of the contract and the contractor’s refusal would not have worked a breach of contract, hence, he ‘ ‘ was not justified in doing the work and cannot recover damages on the theory now invoked ” (Borough Constr. Co. v. City of New York, 200 N. Y. 149,158, supra; Weil Plumbing Corp. v. State of New York, 294 N. Y. 6). The claim for the extra work on the doors in the sum of $1,651.17 must be dismissed.
With respect to the contract balance of $2,796.20 due the claimant and conceded by the State, said amount is hereby awarded the claimant with interest from October 2, 1953, the *687 date of final acceptance of the contract by the State, to the entry of judgment.
Interest upon the sum of $1,100, awarded above, is hereby allowed from October 2, 1953, the date of final acceptance of the contract by the State, to the entry of judgment.
As to motions addressed to the evidence upon which decision was reserved during the trial, the same are hereby denied with an exception to the aggrieved party.
The decision and findings of fact and conclusions of law are made and filed herewith.