**I. S. JOSEPH COMPANY, Incorporated, Petitioner,**

v.

**Elliott S. GOLDE, Victor Colodney, Bernard Colodney, Donald K. Fiekowsky, and I. E. Edelstein, co-partners d/b/a Monitz, Wallack & Colodney, Respondents.**

**No. 4–60–Civ–78.**

United States District Court
D. Minnesota,
Fourth Division.

Aug. 25, 1960.

Maslon, Kaplan, Edelman, Joseph & Borman by Roger E. Joseph, Minneapolis, Minn., for petitioner.

Levitt, Palmer & Rogers, by John M. Palmer, Minneapolis, Minn., for respondents.

DEVITT, Chief Judge.

The petitioner Minnesota corporation seeks an order to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4 (1958), against the respondent New York partnership in a matter alleged to involve more than $10,000.

The controversy arises from petitioner's contract to sell five thousand tons of sugar beet pulp to respondents. Included as the last provision in the contract was an arbitration clause which provided that arbitration at Minneapolis, Minnesota would be final for both parties "for all discrepancies which might eventually arise from this contract." No delivery was made under the contract and each side contends the other party either repudiated or breached the contract.

The principal issue is whether a contract clause submitting to arbitration "all discrepancies which might eventually arise from this contract" covers a dispute involving repudiation or rescission of the contract before delivery.

The contract of October 16, 1959 provided a detailed description of the goods to be delivered.[1] It also specified three price and delivery options for the respondents. Prior to the contract amendment, respondents were required to notify petitioner before close of business on October 19, 1959 as to their election of one price and delivery option and failure to do so would be a default of contract. On October 19, 1959, this portion of the contract was amended. The deadline for selecting the price and delivery option was deleted but the petitioner would have ten days after receipt of respondents' option election to assemble the merchandise. The contract also provided that the petitioner had the option of requiring

1. "Plain Dried Sugar Beet Pulp without molasses, Minnesota origin, 1959 production of sound-fair-average-quality, light gray color, crude, protein not less than 8%, crude far not less than .8% crude fiber not more than 22.0% Nitrogen free extract not less than 53% as per representative sample. Not to exceed 8% sugar."

payment by sight draft bill of lading or letter of credit valid until November 30, 1959.

On November 4, 1959 petitioner sent the following telegram to respondents:

"Pursuant Our Contract October 16 Subheading Payment As Amended We Elect Establishment By You Of Letter Of Credit As Described Stop To Fix The Amount Of Credit You Must At This Time Provide Us With Shipping Instructions Pursuant To Your Price-shipping Option."

Petitioner on November 12, 1959 sent another telegram to respondents as follows:

"In View Of Your Breech (sic) Contract Dated October 16 We Are Commencing Sale For Your Account To Minimize Damages Stop First Indication $31 Short Ton Baltimore Difference For Your Account."

Respondents replied by telegram the next day, November 13, 1959 as follows:

"Shocked Your Arbitrary And High-Handed Conduct In Selling Our Authorization The Beetpulp Contracted For Of October 16th Consider This An Unwarranted Breach On Your Part, And Are Compelled To Disaffirm The Contract For This Reason We Hereby Elect To Rescind The Contract And Consider All Our Obligations Thereunder At An End."

Petitioner contends that respondents breached the contract prior to petitioner's telegram of November 12 but has not specifically identified the substance of the breach. Apparently the alleged breach involved the failure of respondents to provide a letter of credit. The respondents claim that petitioner repudiated the contract by the November 12 telegram.

The petitioner urges that this dispute as to which party originally repudiated or breached the contract is an arbitrable issue within the meaning of "all discrepancies which might eventually arise from this contract." The respondents assert that the word "discrepancies" does not include this dispute. Respondents also contend that even assuming this dispute to be an arbitrable issue, petitioner can no longer rely on the arbitration clause after its alleged repudiation of the contract.

▮ The first issue is whether this court should interpret the meaning and extent of the arbitration clause. Petitioner relies on a portion of The Federal Arbitration Act, 9 U.S.C. § 4 (1958), in its assertion that the court should not decide this question. A part of that section reads as follows:

"The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

Petitioner contends that the interpretation of the arbitration clause should be passed along to the arbitrator because there's no controversy concerning the fact that the arbitration agreement was made and that the respondents refuse to arbitrate.

It is fundamental initially, however, that the court determine whether the parties have agreed to submit a particular dispute to arbitration. Refinery Employees Union of Lake Charles Area v. Continental Oil Company, 5 Cir., 268 F.2d 447, 451, certiorari denied 1959, 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152; Engineers Ass'n v. Sperry Gyroscope Co., 2 Cir., 251 F.2d 133, 137, certiorari denied 1958, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762; B. Fernandez & Hnos., S. En C. v. Rickert Rice Mills, Inc., 1 Cir., 1941, 119 F.2d 809, 814, 136 A.L.R. 351. The controlling principle in situations of this kind was stated in Local 205 United Electrical, etc. v. General Electric Company, 1 Cir., 233 F.2d 85, 101, affirmed 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, as follows:

"Arbitrability is a question which the district court must pass on in

the first instance * * * The scope of an arbitration pledge is solely for the parties to set, and thus the determination of whether a particular dispute is arbitrable is a problem of contract interpretation. * * * However, an arbitration clause, either expressly or by broadly stating its scope to include interpretations of any contract term, may refer the very question of arbitrability to the arbitrator for decision * * * Thus the district court must first determine whether the contract in suit puts matters of arbitrability to the arbitrator or leaves them for decision by the court."

This court must under the general rule proceed to determine as a matter of law whether the dispute involved herein was covered by the arbitration clause.

■ The next issue is whether the word "discrepancies" in the arbitration clause means "all disputes" or only those relating to quantity or quality of the goods delivered.

The petitioner urges that dictionary synonyms for the word "discrepancy" are "disagreement" or "difference" and that these words should be substituted into the arbitration clause by interpretation. Petitioner also points to the words "all" and "arising from the contract" and the location of the arbitration clause at the end of the agreement as evidencing an intention to make the clause all-inclusive.

The respondents, on the other hand, attempt to establish a more restrictive meaning of "discrepancy" as a difference arising from a comparison of two things. In view of the detailed requirements in the contract for quality, color, protein content, sugar content, nitrogen content, fat content and packaging, the respondents argue the "discrepancies" naturally refer to any variations between these contract standards and the character of the pulp as actually delivered.

I agree with the respondents' interpretation in the context of this contract, see Barash v. State, 1956, 2 Misc.2d 680, 154 N.Y.S.2d 317, 321; State ex rel. Doyle v. Superior Court, 1926, 138 Wash. 488, 244 P. 702, 703; In re Barrett, 1924, 209 App.Div. 217, 222, 204 N.Y.S. 705, 709; Smith v. Board of Canvassers, 1915, 92 Misc. 607, 611, 156 N.Y.S. 837, 841; and conclude that the arbitration clause is restrictive and does not cover a dispute arising prior to performance of the contract. The word "discrepancies" does not indicate clearly the scope of the arbitration clause. Respondents should not be forced to submit to arbitration a dispute they did not intend to submit. Accord, B. Fernandez & Hnos., S. En C. v. Rickert Rice Mills, Inc., 1 Cir., 1941, 119 F.2d 809, 815, 136 A.L.R. 351.

Having decided that the dispute herein is not within the ambit of the arbitration clause, we need not consider the further problem of whether the petitioner lost or waived its right to proceed under the arbitration clause after repudiating the contract. See generally, 3 A.L.R.2d 383.

The petition seeking to compel arbitration is denied.