FARMERS EDUCATIONAL AND CO-OPERATIVE UNION OF AMERICA, MINNESOTA DIVISION, v. FARMERS EDUCATIONAL AND CO-OPERATIVE UNION OF AMERICA.[1]

February 2, 1940.

No. 32,187.

[1]Reported in 289 N. W. 884.

*Clifford W. Gardner,* for appellant.

*Doherty, Rumble, Butler, Sullivan & Mitchell,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's suit for a peremptory injunction requiring that "defendant, its officers and agents, servants and employes, and all those purporting to act in its behalf," be restrained "from effecting cancellation" of plaintiff's charter, "and be further enjoined and restrained from granting a charter to any other organization" pending the determination of this case, and that defendant "be required" to reinstate plaintiff and "compelled, * * * to publicly retract the suspension and the statements and false charges"

theretofore made by it, met with an order for dismissal, pursuant to which judgment later was entered, and it appeals.

We shall try to summarize as briefly as possible the facts as disclosed by the pleadings and offers of proof. The task is not an easy one, as the pleadings alone, with attached exhibits, fill nearly 76 pages of the printed record.

Defendant is a corporation organized and existing pursuant to the laws of Texas, and has been functioning under its corporate authority there granted ever since 1902. By its constitution it has for its aim the accomplishment of many claimed beneficent purposes, amongst which may be mentioned:

"To secure equity, establish justice and apply the Golden Rule.

"To discourage the credit and mortgage system.

"To assist our members in buying and selling.

"To educate the agricultural classes in scientific farming * * * classification of crops, domestic economy and the process of marketing.

"* * * To eliminate gambling in farm products by Boards of Trade, Cotton Exchanges and other speculators.

"* * * To strive for harmony and good will among all mankind and brotherly love among ourselves," and even "to garner the tears of the distressed, the blood of the martyrs, the laugh of innocent childhood, the sweat of honest labor, and the virtue of a happy home as brightest jewels known."

There are many other stated objectives, but enough has been related to show generally what they are.

The general plan of organization is to have locals formed. These are then federated with county units and these with the state organization, of which plaintiff was one, and when there has been due compliance with the parent's requirements a charter is issued to the state organization. Thereby every individual member of the local becomes a member of the parent organization and as such is entitled to share in its many and varied activities and advantages. Such charter was issued to plaintiff November 30, 1929, and it was endowed thereby "with full powers to perform

all the duties and ceremonies appertaining" to it as such and was so to remain "whilst they conform to the rules and usages of the Order."

To become a member of a local organization the constitution of the parent order provides that:

"Any person may be admitted to membership if of sound mind, over the age of 16 years, of industrious habits, believes in a Supreme Being, is of good moral character, and is a farmer, country mechanic, school teacher, physician or minister of the gospel and not engaged in any of the following occupations, to-wit: Banking, Merchandising, Practicing Law, or belonging to any trust or combine that is for the purpose of speculating in any kind of agricultural products, or the necessities of life, * * * provided, that ownership of bank stock by any actual farmer shall not be construed as making him ineligible to membership."

But the pious and high-sounding words chosen and used by defendant and accepted by plaintiff as their mutual guide to good conduct did not (like many New Year's resolutions) "pan out" as well as one might expect. And this is especially startling in view of the carefully excluded elements of our population from participation as members. Instead of smooth sailing on the ship "Golden Rule" upon the calm sea of "Equity and Justice," confidently contemplated and expected, we find our Minnesotans treated as a mutinous crew and thrown overboard by defendant's commanding officers. Being thoroughly aroused by this kind of treatment, it is not surprising that plaintiff's complaint bristles with charges of wrongdoing of many kinds and types. The basis for the suit is that the defendant in suspending plaintiff's charter acted fraudulently and illegally; that its acts were "unlawful," based on "political animosity," and were done "solely and only to allow a certain obstreperous group to take control of the state organization and destroy its good name." It charges that although defendant during a period of more than 30 years "has been nonpolitical and has minded its own business and has not, until recently, become the subject of political conniving," yet of

late it has perpetrated upon plaintiff many and varied wrongs, the important ones being those already listed, to which may be added that plaintiff "resents being made a political football or a stepping stone for certain self-seeking individuals to climb on the public payroll and to feed at the public trough."

Defendant's answer denies all of plaintiff's allegations of wrongdoing and alleges much in the way of new matter apparently, if true, fully justifying the conduct of defendant in suspending plaintiff's charter and its rights and privileges thereunder. It pleads as a part of its answer defendant's constitution, by-laws, the authority of the various officers of the defendant thereunder, and the proceedings had in respect to the suspension of plaintiff from membership. Pursuant to authority duly vested in its president, the latter had found plaintiff guilty of many transgressions justifying plaintiff's suspension and expulsion. The remedy afforded under defendant's rules in cases of this nature is limited to an appeal to the next annual meeting of representatives of the various affiliated organizations, such as plaintiff. At a meeting so held the action of the president was upheld by a vote of 81 to 7. The resolution so adopted relates that from the "facts it appears that" defendant "has no choice but to suspend" plaintiff's charter.

Defendant operates in 36 different states. Its ramifications are, practically speaking, nationwide. The suit is against defendant corporation only. No officer, director, or other agent of the corporate entity is included. Nor is there any such within the jurisdiction of our courts. The same is also true in respect of defendant's property and corporate records. Upon this showing being made, the court dismissed plaintiff's bill, holding that the issues presented clearly involve and include only the internal affairs of a foreign corporation, hence that the domicile of defendant could more effectively and appropriately dispose of the cause than could any court in this state. It considered this to be "a case that this court should not take jurisdiction of in the exercise of judicial discretion."

1. Obviously there is not, nor can there be, any dispute about the court's jurisdiction. Clearly defendant's general appearance, and by its own pleading too, conferred jurisdiction by consent were anything otherwise lacking. Its consent is a real, not a fictitious, one. So the general rule in Restatement, Conflict of Laws, § 90 (see Comments a and b), is applicable:

"A state can exercise through its courts jurisdiction over a foreign corporation in so far as the corporation has consented to the exercise of jurisdiction, whether or not the corporation is doing business within the state, and whether or not the cause of action arose out of business done within the state."

2. Equally clear is the rule that:

"The existence and extent of the right of the shareholders to control the actions of the corporate officers or agents is determined by the law of the state of incorporation." *Id.* § 194, Comment a.

The shareholder's right in respect of matters of this nature is adequately stated in *Id.* § 183, Comment b.

3. So in the instant case plaintiff's rights and remedies can be no greater than the rights and remedies of a shareholder in an ordinary stock corporation. Its right as such to object to the conduct occurring in the operation of the corporate enterprise is and must be determined by the law of the state of incorporation. *Id.* § 183, Comment b. North State C. & G. Min. Co. v. Field, 64 Md. 151, 154, 20 A. 1039, 1040. The court there said:

"That where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation, our Courts will not take jurisdiction."

And this court in State ex rel. Lake Shore T. & T. Co. v. De
Groat, 109 Minn. 168, 177, 123 N. W. 417, 134 A. S. R. 764,
quoted the above definition approvingly. Among our other cases
bearing upon this phase are Lind v. Johnson, 183 Minn. 239, 241,
236 N. W. 317, and Olsen v. Danish Brotherhood, 150 Minn. 8,
10, 11, 184 N.: W. 178, where our former cases are cited.

4. It is also true, we think, and as claimed by plaintiff, that
defendant by its general appearance and prayer for general and
affirmative relief gave the court jurisdiction also of the subject
matter of this suit. The court so recognized the situation but
was of the view that the problem presented—

"comes down to a very simple proposition, that this court is asked
to pass upon an action taken by the defendant corporation under
its by-laws and under which the plaintiff receives its rights and
its charter, and the court is also asked to pass on the effect and
regularity of proceedings had in a convention of this defendant
corporation. I feel that even though the defendant admits that
the court has jurisdiction of the person and the subject matter,
and they agree to come in and try these issues, that the court
would not be justified in trying them. I do not feel that courts
in Minnesota should be asked to try this case in which its de-
cision, were it favorable to plaintiff, might be unenforcible."

And, as we have seen, the court dismissed the cause "in the exer-
cise of judicial discretion."

The reason assigned by the court is sound and is sustained by
the decided cases. Thus in Lind v. Johnson, 183 Minn. 239, 241,
236 N. W. 317, 318, we said:

"The rule is supported by the reason that the law of the state
wherein the corporation is organized directly controls the rights
arising between the corporation and its members. It is also sup-
ported by the better reason that the courts of the state of the
corporation's origin afford the most appropriate and efficient
forum for the adjudication of such rights. Frequently such
courts alone possess power adequate to the enforcement of all
necessary judgments. The rule rests upon public policy and effi-

ciency rather than on jurisdictional grounds—more on the want of power to enforce orders rather than on jurisdiction to make them."

The same thought is thus stated in 23 Am. Jur., Foreign Corporations, § 424:

"As a general rule, courts will not take jurisdiction of the internal affairs of a foreign corporation or, in the exercise of visitorial powers, interfere with, supervise, administer, or direct the management of such a corporation; rather, the courts of the domicil of the corporation should be resorted to for the determination of controversies in such respect and for the regulation of its internal affairs."

The cases bearing on this phase are found fully annotated in 18 A. L. R. 1383, *et seq.* See also Restatement, Conflict of Laws, Topic 5, pp. 279, 280.

We conclude that the court properly exercised a sound judicial discretion in dismissing the suit, and the judgment is therefore affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.