Frank N. LATENSER, Respondent,

v.

JOHN LATENSER & SONS, INC., Appellant.

No. CX–82–1404.

Supreme Court of Minnesota.

April 27, 1984.

---

Ralph T. Smith, Bemidji, William E. Naviaux, J. Patrick Green, Omaha, Neb., for appellant.

John A. Masog, Park Rapids, David B. Latenser, Omaha, Neb., for respondent.

SCOTT, Justice.

Plaintiff-respondent Frank Latenser originally brought this action to foreclose a mortgage on property located in Hubbard County, Minnesota. Defendant-appellant John Latenser & Sons, Incorporated, a Nebraska corporation, had given the mortgage in favor of Frank Latenser as security for the performance of an employment contract between Frank and the corporation. Defendant John Latenser & Sons appeared generally by its principal, William B. Latenser, and answered the complaint. Among other things, the corporation asserted that plaintiff had failed to submit the dispute to arbitration as the employment contract required. The Hubbard County District Court issued an order requiring the parties to arbitrate the matters raised by plaintiff's complaint. The arbitrator, who had been named years earlier by agreement of the parties, did not limit his findings to the dispute over the employment contract and mortgage, but arbitrated all disputes between Frank and the corporation that the arbitration agreements covered. The arbitrator's original findings

of fact did not specify all the amounts due and owing to plaintiff, because defendant omitted accounting for funds and property awarded on claims other than those based on the employment contract. The district court, on plaintiff's motion, ordered the parties to account to the arbitrator on all matters and approved the arbitrator's decision to adjudicate all disputes between the parties. Defendant complied with the order, but stated that its additional submissions did not constitute "consent to arbitration of any dispute." The arbitrator then issued his final findings and report. The arbitrator noted defendant's objections to the scope of the arbitration but rejected them. He then made detailed and specific findings and conclusions, and the district court enforced the award over defendant's objections that the arbitrator had acted improperly and that the court lacked jurisdiction to enforce the award.

Frank Latenser then moved for entry of judgment on the arbitrator's award. The court made the full judgment of $101,-211.23, including interest on the award, a lien on the Hubbard County property. The property was to be sold to pay it. The court quoted from a letter the arbitrator had written to the court concerning this matter. The letter noted that the corporation had asked the arbitrator to reconsider his findings, but that he had declined to do so because the corporation had challenged only the authority of the court and the arbitrator, and not the accuracy of the award. Defendant John Latenser & Sons appeals.

This matter arises as a result of a series of disputes between two brothers, Frank and William Latenser, stemming from the breakup of the family business, John Latenser & Sons, Inc., an Omaha architectural firm. Frank and William had come to a "parting of the ways" and, in order to separate their business dealings, entered into a number of agreements relating to the business and its contemplated dissolution. The parties labeled them collectively the "Latenser Transaction." The transaction included William's agreement to buy out Frank's stock in the company, and a

mortgage escrow agreement as well as the employment contract underlying the dispute here. The employment contract called upon Frank to continue as consultant to assist the corporation in completing the "Hall of Justice" contract, a project in Omaha undertaken earlier by the company. The company was to pay Frank $15,000 per year plus 50% of the profits from the job and was to provide him with life insurance as well. The employment contract was to last two years or until the project was completed, whichever occurred later. The company agreed to provide Frank with a first mortgage on certain real property in Hubbard County, Minnesota, "[i]n order to secure [the company's] performance in accordance with the terms of this agreement." This mortgage, dated July 21, 1977, stated that it was given "to secure the payment of Thirty Thousand ($30,-000.00) Dollars and performance in accordance with the terms" of the employment contract. It also stated that all sums due under the employment contract would be payable at Frank Latenser's option 60 days after any material breach by the corporation. The employment contract also provided Frank with any fees collectable or collected after June 21, 1977, in connection with four other jobs and "any Salvation Army jobs." This contract and the stock buy-out agreement contained nearly identical arbitration clauses. The clause in the employment contract read as follows:

8. *Arbitration:* In the event a dispute should arise between the parties to this agreement with respect to any terms of this agreement then said dispute shall be submitted to Bruce Rohde of the firm of McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, P.C. for arbitration. Upon written opinion deciding said dispute, the parties hereto agree that the written opinion issued by Bruce Rohde shall be binding upon them.

The Latenser Transaction also included a written "acknowledgement" signed by both Frank and William expressing their contractual intent. The acknowledgement

stated that the parties had been advised to seek separate legal counsel to represent them in preparing the separation agreement. Both parties requested the Omaha law firm of McGrath, North to prepare the necessary written agreements. The firm, however, was to represent only the corporation's interest and not that of either of the two principals. The acknowledgement contains a broad arbitration clause that provides:

4. *In the event a dispute arises between the undersigned as to any agreement prepared with respect to matters relating to John Latenser & Sons, Inc. or the division thereof or the separation or modification of interest in said corporation,* then such dispute shall be submitted to Bruce Rohde of the firm of McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, P.C. for arbitration. Upon written opinion deciding said dispute, the parties hereto agree that the written opinion issued by Bruce Rohde shall be binding upon them.

(Emphasis added.)

The complaint in this action alleged that the employment contract was secured by a mortgage that was attached to the complaint. Frank alleged that the corporation owed him about $17,000 in unpaid compensation and contract fees, plus an amount "in excess of" about $13,000 for health and life insurance premiums *"and fees owing on other contracts"* (emphasis supplied). The complaint also charged that the corporation had failed to pay "the real estate taxes due and owing in 1978 and 1979," totaling $1,197.39, and that "all of such sums are secured by the terms of such mortgage and by statute to that effect." Frank therefore prayed for judgment "in the total amount of $30,000.00 plus interest," and for an order "directing the sale of said mortgaged premises" as provided by Minn.Stat. § 581.03 (1982), "together with application of the proceeds of sale after deduction of the cost thereof, to the amount adjudged to be due." The complaint also asked the court to foreclose defendant's interest in the land "and for

execution against Defendant for any balance not paid by the sale," as well as such other relief as would be equitable.

The defendant appeared generally and objected on the ground that the matter was subject to arbitration. The parties then entered into a stipulation that the dispute be submitted to arbitration. Pursuant to this stipulation, the district court ordered the parties' chosen arbitrator "to arbitrate the matters raised in Plaintiff's complaint." In a written interrogatory the corporation asked Frank precisely what "other contracts" the complaint referred to beyond the employment contract. Frank's answers of April 16, 1981, make it clear that the complaint was based wholly on the employment contract. It should be pointed out, however, that plaintiff's clarification of this language came *after* the corporation had agreed by stipulation to arbitrate whatever was "raised in Plaintiff's Complaint."

The arbitrator, Bruce Rohde, found that the employment agreement was one of many entered by the parties on June 21, 1977, and that "the present arbitration includes the disputes from said employment agreement and from all matters raised in Plaintiff's Complaint." The arbitrator awarded plaintiff Frank Latenser $8,077.00 in compensation on the employment contract and $8,535.00 on the Salvation Army jobs. The arbitrator directed the corporation to account for its profits on the "Hall of Justice" contract. He ordered the corporation to account for 50% of some relocation expenses collected by it, and to turn over to Frank 50% of the furniture, fixtures, and equipment of the corporation. The arbitrator based these awards on the stock buy-out agreement. The arbitrator also awarded plaintiff funds he found due and owing since 1977, based on the liquidation of the corporate premises. He also found that the corporation owed $25,000 as the result of the condemnation of the corporate premises.

The arbitrator noted that the corporation had objected to these awards. The corporation argued that the equity in the mort-

490

gaged premises could only be used to satisfy claims under the employment agreement. The arbitrator disagreed. He felt that "the equity is an asset of John Latenser & Sons, Inc., and may be used to satisfy other claims of [Frank Latenser] against [the corporation]."

The corporation objected to the findings of the arbitrator that had been based on aspects of the Latenser Transaction other than the employment contract and the mortgage. Defendant also contended that it had been deprived of judicial process and that the arbitrator was biased. The district court rejected these contentions. The court agreed with the arbitrator that "the real estate which is the subject of the mortgage may be used to satisfy other claims of Plaintiff against Defendant," and that judgment should be entered on all disputes between the parties.

The arbitrator, in his final findings and report, indicated that plaintiff's complaint pleaded for relief "for matters including, but not limited to, the breach of the Employment Agreement," and thus rejected the corporation's objections to the broadened scope of arbitration. He noted that he had arbitrated the disputes of these two parties before, and that they had reiterated their disputes in this litigation before him. All disputes, he felt, were within the scope of the arbitration agreement stipulated by the parties.

The salient issue is whether the Minnesota court was constitutionally justified in exercising jurisdiction over the defendant to the full extent of the arbitrator's award.

The minimum contact constitutional standards set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny are debated vigorously by the parties involved. We do not join in this debate because whether this defendant had sufficient minimum contacts with Minnesota is not determinative. We hold that the facts, taken as a whole, indicate that the defendant waived its right to object on this ground.

Where, as here, a case is submitted to arbitration by order of a court, the scope of the issues submitted is controlled by the court's order. *Theofano Maritime Co. v. 9,551.19 Long Tons of Chrome Ore*, 122 F.Supp. 853, 858 (D.Md. 1954); 16 S. Williston, *A Treatise on the Law of Contracts* § 1919A, at 176 (3d ed. 1976). Although generally only the subject matter of the suit is submitted, anything in the order, or included in a stipulation of the parties, will be before the arbitrator. *Wilkinson v. Pritchard*, 145 Iowa 65, 123 N.W. 964 (1909); S. Williston, *supra*, at 177; 5 Am.Jur.2d, *Arbitration and Award* § 34, at 546 (2d ed. 1962). In this case defendant demanded arbitration and then stipulated and agreed to arbitrate all matters raised in plaintiff's complaint and, as noted above, the complaint in turn contained the unexplained references to "fees owing on other contracts." This language is broad enough to cover all matters resolved by the arbitrator. The division of the corporate property and the division of the proceeds from its liquidation are essentially matters of express or implied contract, and damages resulting from their breach are "fees." Defendant's entire case rests on the theory that the only thing it agreed to arbitrate was the plaintiff's claim of breach of the employment contract. The defendant, pursuant to an in-court stipulation, in fact agreed to arbitrate essentially all contractual disputes between these parties. Therefore, their defense collapses. Defendant consented both to the scope of arbitration and to Minnesota's jurisdiction to enforce the award, as it was the party that moved the court to order arbitration. *Cf. Slayton Gun Club v. Town of Shetek*, 286 Minn. 461, 176 N.W.2d 544 (1970) (party who participates in court proceedings submits to jurisdiction of the court); *State v. Minnesota Teamsters Public and Law Enforcement Employees Union Local No. 320*, 316 N.W.2d 542 (Minn.1982) (state bound by arbitration to which it agreed). Plainly, jurisdiction may be exercised over a foreign corporation to the extent of its actual consent. *Sivertsen v. Bancamerica-Blair Corp.*, 43 F.Supp. 233 (1940), *ap-*

*peal dismissed,* 129 F.2d 1022 (8th Cir. 1942); *Farmers Educational and Co-Operative Union of America, Minnesota Division v. Farmers Educational and Co-Operative Union of America,* 207 Minn. 80, 289 N.W. 884 (1940). There is also a difference between the type of consent to jurisdiction found in an answer to a complaint and that which results from an in-court stipulation. When defendant answered the mortgage foreclosure action, it apparently faced at most a $30,000 judgment to be satisfied out of the land. When it voluntarily entered the stipulation, however, it affirmatively sought relief, and because the parties stipulated to the language of submission, it is fair to hold defendant to a broad reading of its scope.

Affirmed.